UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

――――

ROBERT D. SANGO,

                      Plaintiff,                    Case No. 1:14-cv-345

v.                                          Honorable Paul L. Maloney

R. AULT et al.,

                      Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's action for failure to state a claim against Defendants Huss, Stoddard, Smith, Eryer, Burns, Lamphere, Corbett, Watkins, Tebo, Williams, Spitzley, Klinkhammer, Russell, Daughdree, Unknown Parties identified

as Health Care Services Director and Staff, and Soros.  The Court will serve the complaint against Defendants Ault, Schafer and Tester.

**Discussion**

I.      Factual allegations

Plaintiff Robert D. Sango presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF).  Plaintiff sues the following ICF personnel as Defendants: Assistant Residential Unit Supervisor (ARUS) R. Ault; Deputy Warden Erica Huss; Warden Cathleen Stoddard; Warden (Unknown) Smith; Correctional Officers (C/O) (Unknown) Eryer, (Unknown) Burns, (Unknown) Lamphere, (Unknown) Corbett, (Unknown) Watkins, (Unknown) Tester, (Unknown) Tebo, (Unknown) Williams, (Unknown) Schafer, (Unknown) Spitzley and (Unknown) Klinkhammer.  Additionally, Plaintiff sues the following as Defendants: MDOC Manager of Grievances and Appeals Richard Russell; Aramark Food Service Director Jennifer Daughdree; Unknown Parties identified as Health Care Services Director and Staff; and Assistant Attorney General Allan J. Soros.

Plaintiff alleges that on November 22, 2013,

he filed a preliminary injunction . . . to get his misconduct set aside, and began positioning to file against Deputy Warden Huss for retaliating by keeping Plaintiff in segregation against policy.  At this time, when Deputy [Warden] Huss would come to the unit, officers would harass me. C/O Lamphere denying me to see SCC (Security Classification Committee 12/20/14 then C/O Tester not giving me dinner 12/24/14 etc.[1]

(Compl., docket #1, Page ID#1.)

On December 30, 2013, Plaintiff filed a complaint against Defendant Huss,

---

[1]Plaintiff's complaint is hand-written in very small text.  Plaintiff appears to have written 2014 as the year in which these events took place although December, 2014 has not yet come to pass.  Presumably, Plaintiff meant to write 2013, the year in which other events alleged in his complaint took place.

and from that time, any time I filed a document in court ARUS Ault would notify Officers who would harass me, assaulting me, not feeding me. C/O Lamphere purposely put me in a shower no one else was put in, because it was broken, hoping I would react adversely giving staff an excuse to restrain me (a tactic that usually works on 98% of the population at this facility, which is mental health) when I didn't react, (the next shower day) C/O Corbett told Nurse Crunk that I'm a spitter (a few days before C/O Eryer had slammed a mental health inmate on his face in front of my door, claiming he spit on him) when showers come, Corbett and Lamphere came to my cell out of order of the other Officers who went in proper order (1, 2, 3 ...) and were whispering to each other about not letting my neck go.

(*Id.*)

Plaintiff states that on January 13, 2013, he wrote a TRO on Defendants Corbett and Lamphere.

ARUS Ault notified staff and on January 14, 2014 C/O Schafer came to my cell after I had eaten and told me he put 'shit' in my food. I asked to see the nurse and Schafer walked away. I told 3rd shift staff who said I would be scheduled 1/15/14 at 2:00 p.m. When I wasn't seen I asked C/O Tebo for a healthcare kite and he and C/O Williams refused to provide me with one. Tebo shutting my flap so I couldn't see the nurse who delivers medication on P.M. shift. I wrote TROs.

(*Id.*)

On January 26, 2014, while giving Plaintiff his dinner tray, Defendant Tester told Plaintiff that

Schafer told him I said I didn't like extra protein in my food, while giving me my tray Tester said: 'Try a little vitamins, my sister and girl friend says [sic] it makes their hair glow.' When I opened my tray there was seamen [sic] on my cake. That night C/O Klinkhammer shut my window, and when I asked him about it he said, 'you're the guy who ate the vitamins,' shut my window flap and began hitting my door 'loud' (like a gun shot) every time he done a round (all night). I filed a TRO.

(*Id.*)

Plaintiff alleges that every time he filed something,

> officers would retaliate using correctional behavioral strategies of reward and punishment to force me to stop addressing the court, because ARUS R. Ault (who by policy must scan my legal work to asure [sic] that its legal) would read my out going legal mail and tell staff whose favorite punishment is to not feed me, especially Watkins, Burns, Eryer, and Spitzley, but on days I was to see the court my tray would almost be empty, coming directly from food service, sometimes for entire weeks.  I notified Warden Stoddard and her Successor Smith with no investigation and continued retaliation.

(*Id.*)

Plaintiff allleges that ICF refused to respond to his grievances, "and Lansing, Step III should have turned the issue over to Internal Affairs Division.  I still have not seen health care."

(*Id.*)

On February 24, 2014, Magistrate Judge Mark A. Reardon from the United States District Court for the Eastern District of Michigan addressed a TRO that Plaintiff had filed

> ordering relief, but Assistant Attorney General upset about the court ruling on the matter against his motion, told the Ionia Correctional Administration they didn't have to worry, the Eastern District doesn't have jurisdiction, but to move ARUS Ault out of my unit to moot the R & R.

(*Id.* at Page ID#2)

As relief, Plaintiff seeks a preliminary injunction, injunctive and declaratory relief, punitive, compensatory and nominal damages, and state tort damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.      Defendant Ault

Plaintiff alleges that on December 30, 2013, he filed a complaint against Defendant Huss.  Thereafter, any time he filed a document in court, Defendant Ault would notify other officers who would harass, assault and stop feeding him.  Additionally, Plaintiff alleges that on January 13, 2014, he wrote a TRO on Defendants Corbett and Lamphere, that Defendant Ault notified staff and on January 14, 2014, Defendant Schafer came to Plaintiff's cell after Plaintiff had eaten and told Plaintiff that he had put "shit" in Plaintiff's food.  (Compl., docket #1, Page ID#1.)  Finally, Plaintiff alleges that after Defendant Ault scans Plaintiff's legal mail, pursuant to policy, Defendant Ault would tell staff "whose favorite punishment is to not feed me."  (Compl., docket #1, Page ID#1.)

At this juncture in the proceedings, Plaintiff's allegations warrant service of the complaint on Defendant Ault.

## B.      Defendant Huss

Plaintiff alleges that after he "began positioning to file against Deputy Warden Huss for retaliating by keeping [him] in segregation against policy," when Defendant Huss would come to the unit, officers would harass him.  (*Id.*)  This is the sole allegation Plaintiff makes against Defendant Huss.  Plaintiff does not allege that Defendant Huss engaged in any active conduct.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any

named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").   Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Huss.

To the extent Plaintiff is attempting to state a retaliation claim against Defendant Huss, he fails to do so.   In order to set forth a First Amendment retaliation claim, Plaintiff must first establish that he was engaged in protected conduct.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  That Plaintiff "began positioning to file against Deputy Warden Huss" is not, without more, protected conduct.  *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (recognizing that "protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims") .

### C.    Defendants Stoddard and Smith

Plaintiff alleges that he notified Defendants Stoddard and Smith about something, but it is not clear exactly what Plaintiff told these Defendants.  Be that as it may, whatever he notified Defendants Stoddard and Smith about, they failed to conduct an investigation.

Plaintiff fails to make specific factual allegations against Defendants Stoddard and Smith, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Stoddard and Smith engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

**D.      Defendants Watkins, Burns, Eryer and Spitzley**

Plaintiff mentions Defendants Watkins, Burns, Eryer and Spitzley only once in his complaint.  Plaintiff alleges that every time he filed something,

> officers would retaliate using correctional behavioral strategies of reward and punishment to force me to stop addressing the court, because ARUS R. Ault (who by policy must scan my legal work to asure [sic] that its legal) would read my out going legal mail and tell staff whose favorite punishment is to not feed me, especially Watkins, Burns, Eryer, and Spitzley, but on days I was to see the court my tray would almost be empty, coming directly from food service, sometimes for entire weeks.

(Compl., docket #1, Page ID#1.)

To the extent Plaintiff claims that Defendant Watkins, Burns, Eryer and Spitzley retaliated against him every time he filed something or because he was sending out legal mail, he fails to state a claim.  As noted above, to state a First Amendment retaliation claim, Plaintiff must first establish that he was engaged in protected conduct.  *Thaddeus-X*, 175 F.3d at 395.  Next Plaintiff must establish that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in the protected conduct.  *Id.* at 396.  Finally, Plaintiff must show that the adverse action was motivated, at least in part, by the protected conduct.  *Id.* at 399.  Plaintiff must show that the exercise of the protected right was a substantial or motivating factor in Defendants' alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

While filing legal documents is protected conduct, Plaintiff fails to sufficiently allege that Defendants Watkins, Burns, Eryer and Spitzley took any adverse actions against him.  Although Plaintiff alleges, generally, that "officers would retaliate using correctional behavioral strategies of reward and punishment," (Compl., docket #1, Page ID#1), and that staff's "favorite punishment is

9

to not feed me, especially Watkins, Burns, Eryer and Spitzley," (*Id.*), he does not offer a single instance in which Defendants Watkins, Burns, Eryer and Spitzley did not feed him or otherwise caused him harm. Moreover, even if making general allegations about adverse actions were enough, nowhere does Plaintiff alleges facts from which it could be reasonably inferred that Defendants Watkins, Burns, Eryer and Spitzley were motivated to take such adverse actions by Plaintiff's filing legal documents and sending out legal mail. Consequently, Plaintiff fails to state a claim against Defendants Watkins, Burns, Eryer and Spitzley.

### E.      Defendants Lamphere, Tester and Corbett

Plaintiff alleges that on November 22, 2103,

> he filed a preliminary injunction . . . to get his misconduct ticket set aside, and began positioning to file against Deputy Warden Huss for retaliating by keeping Plaintiff in segregation against policy. At this time, when Deputy [Warden] Huss would come to the unit, officers would harass me. C/O Lamphere denying me to see SCC (Security Classification Committee 12/20/14 then C/O Tester not giving me dinner 12/24/14 etc.[2]

(*Id.*)

Additionally, Plaintiff alleges that after he filed a complaint against Defendant Huss on December 30, 2013, any time he filed a document, Defendant Ault would notify other officers who would harass him, assault him and not feed him. Plaintiff alleges that Defendant Lamphere

> purposely put me in a shower no one else was put in, because it was broken, hoping I would react adversely giving staff an excuse to restrain me (a tactic that usually works on 98% of the population at this facility, which is mental health) when I didn't react, (the next shower day) C/O Corbett told Nurse Crunk that I'm a spitter (a few days before C/O Eryer had slammed a mental health inmate on his face in front of my door, claiming he spit on him) when showers come, Corbett and Lamphere came to my cell out of order of the

---

[2]As stated in note 1, *supra.*, both the calendar and the context of the complaint demonstrate that Plaintiff meant to write 2013.

> other Officers who went in proper order (1, 2, 3 ...) and were whispering to
> each other about not letting my neck go.

(*Id.*)

Finally, Plaintiff alleges that on January 26, 2014, while giving Plaintiff his dinner

tray, Defendant Tester told Plaintiff that

> Schafer told him I said I didn't like extra protein in my food, while giving me
> my tray Tester said: 'Try a little vitamins, my sister and girl friend says [sic]
> it makes their hair glow.' When I opened my tray there was seamen [sic] on
> my cake.

(*Id.*)

Plaintiff's allegations against Defendants Lamphere and Corbett fail to state a claim.

First, it is entirely unclear whether Plaintiff was entitled to access the Security Classification

Committee on December 20, 2013, and if so, but he was not given access, whether any injury befell

Plaintiff because he was not present.  Second, neither the single instance of Defendant Lamphere

purposely placing Plaintiff in a non-working shower stall, nor the single instance of Defendant

Tester failing to give Plaintiff his dinner, state an Eighth Amendment claim.  At worst, Plaintiff was

temporarily inconvenienced by not being able to take a shower and not having a single meal.

However, allegations about temporary inconveniences, e.g., being deprived of a lower bunk,

subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions

fell beneath the minimal civilized measure of life's necessities as measured by a contemporary

standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P.*

*v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the

difficulties in administering a large detention facility do not give rise to a constitutional claim."

(internal citation omitted)).  Plaintiff does not suggest that he was continuously placed in the non-

working shower, that he was deprived of more than one meal or that, because he did not react

11

adversely, as Defendant Lamphere allegedly hoped he would, Plaintiff was harmed in any way.

Third, that Defendants Lamphere and Corbett were whispering about not letting go of Plaintiff's neck does not, by itself, state a claim. Plaintiff does not suggest that Defendants Lamphere and Corbett actually grabbed his neck at all. Moreover, without more, Defendants threatening whispers are insufficient to support an Eighth Amendment claim. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Finally, to the extent Plaintiff claims that Defendants Lamphere, Tester and Corbett undertook the various actions ascribed to them in retaliation for Plaintiff accessing the court, he fails to state a claim. As discussed above, in order to set forth a First Amendment retaliation claim, Plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). While filing a court action is protected conduct, Plaintiff's allegations fail to establish the other elements necessary to state a retaliation claim. Plaintiff makes

12

no allegations to suggest that Defendants Lamphere, Tester or Corbett were aware of Plaintiff's court action.[3]  Further, even if they were aware, and assuming *arguendo*, that Defendants Lamphere's, Tester's and Corbett's actions could be considered adverse, Plaintiff fails to allege any facts to suggest that their actions were motivated by Plaintiff's court filings; he simply asserts that he filed a document in court and everything that happened to him thereafter was in retaliation for the filing.  While temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Consequently, Plaintiff fails to state a retaliation claim against Defendant Lamphere, Tester and Corbett.

To the extent Plaintiff raises an Eighth Amendment claim based on Defendant Tester allegedly placing semen on the cake on Plaintiff's food tray, at this juncture in the proceedings, Plaintiff's allegations warrant service of the complaint on Defendant Tester.

### F.  Defendants Tebo and Williams

Plaintiff states that on January 13, 2013, he wrote a TRO on Defendants Corbett and Lamphere.

> ARUS Ault notified staff and on January 14, 2014 C/O Schafer came to my cell after I had eaten and told me he put 'shit' in my food.  I asked to see the nurse and Schafer walked away.  I told 3rd shift staff who said I would be scheduled 1/15/14 at 2:00 p.m.  When I wasn't seen I asked C/O Tebo for a healthcare kite and he and C/O Williams refused to provide me with one. Tebo shutting my flap so I couldn't see the nurse who delivers medication on

---

[3]Indeed, with respect to Defendant Lamphere's allegedly denying Plaintiff access to the Security Classification Committee and Defendant Tester's single incident of failing to feed Plaintiff dinner, Plaintiff does not even allege that he had filed an action against Defendant Huss.  Rather, Plaintiff alleges that he "began positioning to file against" her.

P.M. shift.  I wrote TROs.

(Compl., docket #1, Page ID#1.)

To the extent Plaintiff claims that he did not receive adequate health care, he fails to state a claim.  A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Plaintiff does not expressly state why he needed to see health care staff, but

14

presumably, he wished to see health care staff because, if Plaintiff were to believe Defendant Schafer, Plaintiff had consumed human excrement. While a repugnant thought, Plaintiff does not allege that he suffered any ill effects from having allegedly consumed human excrement. Additionally, Plaintiff does not reveal why he was not seen at his scheduled health care appointment. Plaintiff also does not say that he was never seen by health care staff in connection with any concerns he had from having allegedly consumed human excrement. Having failed to establish that he suffered from a sufficiently serious medical need, Plaintiff fails to state a claim for the deprivation of adequate medical care.

Additionally, to the extent that Plaintiff alleges that Defendants Tebo's and Williams' refusal to provide him with a health care kite form and Defendant Tebo's shutting of his door flap so that he could not see the afternoon nurse amounted to an Eighth Amendment violation, he fails to state a claim. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). As noted above, Plaintiff has failed to establish that he faced a sufficiently serious medical need to support an Eighth Amendment claim.

Finally, to the extent Plaintiff alleges that Defendants Tebo and Williams acted as they did in retaliation for Plaintiff writing a TRO against Defendants Corbett and Lamphere, Plaintiff fails to state a claim. As discussed above, to state a retaliation claim, Plaintiff must

15

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. In addition, Plaintiff must establish that the exercise of his protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1037. While filing a court action is protected conduct, Plaintiff's allegations fail to establish the other elements necessary to state a retaliation claim. Plaintiff makes no allegations to suggest that Defendants Tebo and Williams were aware of Plaintiff's court action or that Plaintiff's filing of a court action against their colleagues motivated them to act as they did.

Moreover, even if Plaintiff had established that Defendants Tebo and Williams were aware of Plaintiff's court action and that it motivated their conduct, it is unlikely that not being given a health care kite form under the circumstances presented here and having a door flap closed which prevented Plaintiff from seeing the afternoon nurse one time, are sufficiently adverse actions to support a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Moreover, certain deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 397 (because discontinuation of contact visits between paralegal and inmates was a "*de minimis* inconvenience . . . , it did not constitute cognizable First Amendment retaliation."); *see also Bell*, 308 F.3d at 603 (explaining that "[a]lthough the effect on freedom of speech need not be great in order to be actionable, it would trivialize the First Amendment to allow

16

plaintiffs to bring First Amendment retaliation claims for *any* adverse action no matter how minor." (internal quotations removed)).

For all of the foregoing reasons, Plaintiff fails to state a claim against Defendants Tebo and Williams.

### G.    Defendant Schafer

Plaintiff states that on January 13, 2013, he wrote a TRO on Defendants Corbett and Lamphere,

> ARUS Ault notified staff and on January 14, 2014 C/O Schafer came to my cell after I had eaten and told me he put 'shit' in my food.  I asked to see the nurse and Schafer walked away.

(Compl., docket #1, Page ID#1.)

At this juncture in the proceedings, Plaintiff's allegations warrant service of the complaint on Defendant Schafer.

### H.    Defendant Klinkhammer

With respect to Defendant Klinkhammer,[4] Plaintiff alleges that on the night Defendant Tester gave Plaintiff a food tray with cake that allegedly had semen on it, Defendant Klinkhammer

> shut my window, and when I asked him about it he said, 'you're the guy who ate the vitamins,' shut my window flap and began hitting my door 'loud' (like a gun shot) every time he done a round (all night).

(*Id.*)

Plaintiff fails to state a claim against Defendant Klinkhammer.  A single instance of

---

[4]On April 9, 2013, Plaintiff filed a single-page document styled, "amendment to complaint" in which he purports to amend his  complaint to add Correctional Officer Klinkhammer as a defendant.  Plaintiff explains that he inadvertently failed to list Klinkhammer as a defendant, although Klinkhammer's allegedly actionable conduct is described in the complaint.  The Court accepts Plaintiff's amendment and screens the complaint with Klinkhammer as a defendant.

shutting a window flap, and loudly banging on Plaintiff's door during nightly rounds are insufficient to support an Eighth Amendment claim.  At worst, Plaintiff was temporarily inconvenienced by not being able to look out his window flap that night and by having his sleep intermittently disturbed by loud banging.  However, as noted above, allegations about temporary inconveniences e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  Plaintiff does not suggest that his window flap was continuously kept closed, or what the consequence would be if that happened, nor does he state that the loud banging was an on-going event.  Consequently, Plaintiff fails to state a claim against Defendant Klinkhammer.

## I.  Defendants Russell, Daughdree, Unknown Parties identified as Health Care Director and Staff and Soros

Plaintiff fails to set forth any allegations against Defendants Russell, Daughdree, Unknown Parties identified as Health Care Director and Staff and Soros in the body of his complaint.  As noted above, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore*, 92 F. App'x at 190.  Because Plaintiff's allegations fall far short of the minimal pleading standards under

18

FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Russell, Daughdree, Unknown Parties identified as Health Care Director and Staff and Soros.[5]

III.    Motion for Supplemental "Pendent" Jurisdiction of State Tort Claims

Shortly after filing his complaint, Plaintiff filed a motion for supplemental "pendent" jurisdiction of state tort claims (docket #11) which the Court construes as a supplement to the complaint.

Plaintiff's supplement to the complaint purports to add a state law claim for negligence against Defendants Russell, Stoddard, Smith, Huss, Ault, Unknown Parties identified as Health Services Staff and Doughdree. As discussed above, Plaintiff has failed to sufficiently alleges any federal claims for relief against Defendants Russell, Stoddard, Smith, Huss, Unknown Parties identified as Health Services Staff and Doughdree. Accordingly, because the Court has dismissed all of Plaintiff's federal law claims against these Defendants "it should not reach [Plaintiff's] state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Consequently, where a district court has exercised

_____

[5]Even if the Court were to assume that Defendant Soros is the Assistant Attorney General who "told the Ionia Correctional Administration they didn't have to worry [about the Magistrate Judge's order], the Eastern District doesn't have jurisdiction, but to move ARUS Ault out of my unit to moot the R & R" (Compl., docket #1, Page ID#2), Plaintiff would still fail to state a claim because Defendant Soros did not infringe on any of Plaintiff's constitutional rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that the first step in analyzing a claim brought under 28 U.S.C. § 1983 is to "identify the specific constitutional right allegedly infringed").

jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.  *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998).  Accordingly, Plaintiff's negligence claim against Defendants Russell, Stoddard, Smith, Huss, Ault, Unknown Parties identified as Health Services Staff and Doughdree must be dismissed.

To the extent Plaintiff asserts a claim of negligence against Defendant Ault, on whom Plaintiff's complaint will be served, he fails to state a claim.  Plaintiff alleges that "R. Ault, as supervisor[ ], had a duty to ensure corrective action was/is taken."  (Mot., docket #11, Page ID#23.) Additionally, Plaintiff alleges that,

> in retaliation for several, filings in the federal court, has been physically assaulted, not fed, fed human waste, harassed and retaliated against by correctional officers . . . with no corrective oversight or investigations.  R Ault even directing and protecting subordinates.  Among other things, R. Ault (Assistant Resident Unit Supervisor) would tell c/o's (correctional officers) when I would file documents (considering against staff) in the federal court, causing them to retaliate.

 (*Id.*)   Further, Plaintiff alleges that as a  supervisor, Defendant Ault had "a duty to enforce corrective action with subordinates (MDOC Policy Directive 02.03.130, sec. C) and investigate claims of abuse by staff of prisoners (MDOC Policy Directive 03.03.130, sec. J)."  (*Id.* at Page ID#24.)  Finally, Plaintiff alleges that Defendant Ault "actually instructed and guided officers to injure Plaintiff." (*Id.* at Page ID#25.)

It is axiomatic that any claim of negligence requires the plaintiff to establish four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3)

the breach proximately caused plaintiff injury; and (4) the plaintiff suffered damage. *Cummins v. Robinson Twp.,* 283 Mich App 677, 692 (2009).  The question of whether a legal duty exists is for the court to decide.  *Id.*  If no duty exists, there can be no liability for negligence.  *Id.*  In addition to the elements of negligence itself, a claim for gross negligence requires conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.  *See Xu v. Gay,* 257 Mich App 263, 269 (2003) (citation omitted).

Government employees are immune from tort liability "if they acted or reasonably believed they acted within the scope of their employment, engaged in the discharge of a government function, and their 'conduct [did] not amount to gross negligence that [was] the proximate cause of the injury or damage.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quoting MICH. COMP. LAWS § 691.1407(2)).  Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a).  However, the law in Michigan does not allow intentional acts to be the basis of a claim for gross negligence.  *Miller v. Sanilac County,* 606 F.3d 240 (6th Cir. 2010).  Indeed, Michigan courts have repeatedly "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 641 (6th Cir. 2013) (quoting *VanVorous v. Burmeister*, 262 Mich App 467, 483 (2004)).  If a gross negligence claim is premised on the same facts as an intentional tort claim, it should be dismissed if the allegation of intentional conduct is merely "duplicative of, and subsumed by," the intentional tort claim. *Ranshaw v. City of Lansing,* No. 1:09–CV–500, 2009 WL 4352372 at *3 (W.D. Mich. Nov.30, 2009). *See also Livermore v. Lubelan,* 476 F.3d 397, 407 (6th Cir. 2007) (plaintiff's gross negligence claim failed because it was "predicated on intentional—rather than negligent—conduct');

*Davis v. City of Detroit,* No. 05–72669, 2006 WL 2990511 at *7 (E.D. Mich. Oct.19, 2006) (plaintiff "may not simultaneously assert that [defendant's] actions were intentional for purposes of his federal claims . . . but then also claim that [defendant] acted with gross negligence.").

Plaintiff's negligence claim against Defendant Ault is based on the same intentional conduct on which Plaintiff bases his First Amendment retaliation claim; that is, that Defendant Ault is purposely telling other officers when Plaintiff files a document so that the officers will retaliate against Plaintiff. Plaintiff can not simultaneously assert that Defendant Ault's conduct was intentional, and, at the same time, contend that he acted negligently. Consequently, Plaintiff has failed to state a negligence claim against Defendant Ault.

## <u>Conclusion</u>

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Huss, Stoddard, Smith, Eryer, Burns, Lamphere, Corbett, Watkins, Tebo, Williams, Spitzley, Klinkhammer, Russell, Daughdree, Unknown Parties identified as Health Care Services Director and Staff, and Soros will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Ault, Schafer and Tester.

Plaintiff motion for supplemental "pendent" jurisdiction of state tort claims which the Court construes as a supplement to the complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An Order consistent with this Opinion will be entered.


Dated:   __April 30, 2014___                    /s/ Paul L. Maloney_____
                                                Paul L. Maloney
                                                Chief United States District Judge